## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARTANIEZ GODWIN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO. CV 07-B-1411-S** |
| | } | |
| **U.S. STEEL CORPORATION,** | } | |
| | } | |
| **Defendant.** | } | |

## <u>MEMORANDUM OPINION</u>

_____This case is currently before the court on defendant U.S. Steel Corporation's ("US Steel") Motion for Summary Judgment.  (Doc. 14.)[1]  Based on the submissions of the parties, arguments of counsel, and for the following reasons, the court is of the opinion that US Steel's motion is due to be granted.

**I.      Summary of Complaint**

Plaintiff Martaniez Godwin ("Godwin") is an African-American resident of Fairfield, Alabama.  (Doc. 1, ¶ 2.)  US Steel employed Godwin from August 4, 1997, until May 30, 2006.  (Doc. 1, ¶ 2; Doc. 16, Exh. 2.)  In his complaint, Godwin alleges that US Steel racially discriminated and retaliated against him in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.  (Doc. 1.)

---

[1]    Reference to a document number, ["Doc. ____"], refers to the number assigned to each document as it is filed in the court's record.

Godwin's claims stem from assorted allegations that he was passed over for positions, denied training, reprimanded, docked pay for being tardy, and eventually terminated, all on the basis of his race or for engaging in protected activity.  (Doc. 1, ¶¶ 6-11, 13, 18.)

## II.    Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56(c), summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).   A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Id.* at 249.  Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be

drawn in his favor. *See id.* at 255.  Nevertheless, the non-moving party need not be given the benefit of every inference but only of every reasonable inference." *Evans v. Stephens*, 407 F.3d 1272, 1284 (11th Cir. 2005)(quoting *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)(emphasis added).

## III.    Factual Summary[2]

Godwin's allegations of unlawful discrimination and retaliation arise out of a series of events beginning in 2004 and ending in 2006.

### (a)    Workplace Description

As a production and maintenance employee at US Steel, Godwin was represented by United Steel Workers of America ("USWA") and was subject to the USWA/USS Basic Labor Agreement ("BLA").  (Doc. 16, Exh. 3, ¶ 4; Exh. 4.)  The BLA contains a grievance and arbitration procedure and provisions for filing civil rights complaints with a civil rights committee.  (Doc. 16, Exh. 3, ¶ 6; Exh. 5.)  US Steel has implemented and distributed an EEO policy.  (Doc. 16, Exh. 5.)

Godwin was subject to the seniority system provided under the BLA and the Fairfield Works Seniority Rules and Regulations.  (Doc. 16, Exh. 4 & 6.)  Godwin

---

[2]  As required when determining a Motion for Summary Judgment, the court has construed the facts in the light most favorable to the plaintiff Martaniez Godwin, the non-moving party.  All disputed facts are resolved in his favor and all reasonable inferences arising from those facts are drawn in his favor. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89, 110 S. Ct. 3177, 3188-89, 111 L. Ed. 2d 695 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

received a copy of US Steel's Plant Conduct Rules and Regulations, which, among other things, forbid insubordination.  (Doc. 16, Exh. 8, p. 33.)

Pursuant to a new BLA adopted in 2003, Godwin was employed in the Fairfield Works Flat Roll Plant Finishing Operations Coating Line Seniority Units.  (Doc. 15, ¶ 8; Doc. 16, Exh. 3, ¶ 9.)  These seniority units include lines of promotion that USWA and US Steel have agreed upon.  (Doc. 16, Exh. 7, p. 18-20; Exh. 10.)  The initial level in the line of promotion is the Utility Technician Labor Grade 2 position ("Labor Grade 2"), which includes the warehousemen and utilityman functions.  (Doc. 16, Exh. 10; Exh. 11, ¶ 4.)  The next level in the line of promotion is the Operating Technician I Labor Grade 3 position ("Labor Grade 3"), which includes, among other positions, the Entry End Operator and Exit End Operator positions.  (Doc. 16, Exh. 10; Exh. 11, ¶¶ 5-6.)  The various functions at each level are paid at the same rate.  (Doc. 16, Exh. 11, ¶ 7.)

Generally, the most senior employee in the Labor Grade 2 box who is properly performing his job and wants to move up to the Labor Grade 3 box will do so when there is an opening.  (Doc. 16, Exh. 7, p. 23; Exh. 11, ¶ 8.)  In the Labor Grade 3 box, an employee normally becomes proficient in the Entry End Operator function, then the Exit End Operator function, then the Inspector function, and finally the other Operator functions.  (Doc. 16, Exh. 11, ¶ 9.)  An employee may receive training in any function within a box by training on overtime at the employee's discretion.  (Doc. 16, Exh. 11, ¶ 10; Exh. 7, p. 49-50, 54-55; Exh. 9, p. 26-27.)  An employee may also schedule training

during their normal shift when production conditions permit.  (Doc. 16, Exh. 11, ¶ 11.)

      **(b)**    **2004**

During his career at US Steel, Godwin had a lengthy discipline history.  (Doc. 16, Exh. 3, ¶¶ 11-12, Ex. A.)  In 2003, Godwin began performing the functions of an Exit End Operator in the Labor Grade 3 box.  (Doc. 16, Exh. 3, ¶ 13.)  Godwin's discipline record, provided by US Steel, reflects that he was suspended for poor workmanship on January 7, 2004.  (Doc. 16, Exh. 3, Ex. A.; Exh. 13.)  Godwin's counsel alleged at oral argument that this was an instance of racial discrimination against Godwin.  According to Godwin's testimony at his deposition, a white employee, Joe Addison, experienced similar mechanical problems while operating the Entry End function and was not disciplined.  (Doc. 16, Exh. 1, p. 173-177.)  Godwin qualified this testimony with the acknowledgment that he had not actually seen Joe Addison experience any mechanical problems, but the cause of a mechanical problem on the line is evident to others working on the line.  (Doc. 16, Exh. 1, p. 174-175.)  Godwin never filed a complaint over the incident.  (Doc. 16, Exh. 1, p. 178.)  Godwin was eventually disqualified from the Exit End position and moved to the Entry End Operator function in April 2004.  (Doc. 16, Exh. 3, ¶ 14-16; Doc. 22, p. 3, ¶ 24.)

      **(c)**    **2005**

According to Godwin's deposition testimony, US Steel's attorneys questioned him in "early 2005" regarding a lawsuit involving another employee.  (Doc. 16, Exh. 1, p. 211,

5

238-239.)  Godwin revealed to those attorneys that Ralph Doering, an employee at US Steel, had discriminated against him.  (Doc. 16, Exh. 1, p. 211, 238-239.)  While there is no evidence in the record that this information was ever conveyed to any employee of US Steel, Godwin contends that US Steel retaliated against him for these comments.  (Doc. 18, p. 37, "defendant was aware that Plaintiff complained in early 2005.")

Godwin was suspended for five days in June 2005 from the Entry End Operator position for unsatisfactory work.  (Doc. 16, Exh. 14.)  He filed a grievance over this discipline.  (Doc. 16, Exh. 16.)  On August 17, 2005, Godwin was suspended again, this time subject to discharge.  (Doc. 16, Exh. 15.)  Later that August, Godwin was removed from the Entry End Operator position and assigned to the Utilityman function in the Labor Grade 2 box.  (Doc. 16, Exh.1, p. 115-116; Exh. 7, p. 69, 87; Exh. 11, ¶ 13.)  Senior Process Leader David Worthen ("Worthen") decided to issue the discipline and disqualify Godwin from the Labor Grade 3 box because of his continued poor performance, including his inattention to his job duties.  (Doc. 16, Exh. 11, ¶¶ 2, 14.)  Worthen and Scott Messer ("Messer"), another of Godwin's supervisors, knew of no other employees who had performance problems similar to Godwin or who received as much discipline as Godwin for poor work performance.  (Doc. 16, Exh. 11, ¶ 15; Exh. 9, p. 45, 47-50.)  For example, Messer testified at his deposition that he could recall no employees other than Godwin who had fallen asleep while on the job.  (Doc. 16, Exh. 9, p. 42-46.)

On August 31, 2005, Worthen decided to convert Godwin's August 17 suspension into a discharge.  (Doc. 16, Exh. 11, ¶ 18.)  Godwin grieved this discharge as well as his "illegal disqualification" from the Labor Grade 3 box.  (Doc. 16, Exh. 3, ¶ 17; Exh. 16.)  Godwin was provided "justice and dignity" which permitted him to work until his discharge grievance was resolved.  (Doc. 16, Exh. 3, ¶ 18; Exh. 17, p. 32.)

Godwin's complaint and deposition note that, concurrent with Godwin's demotion problems, Scott Messer docked Godwin's pay several times for tardiness in late 2005 and early 2006.  (Doc. 1, ¶ 10; Doc. 16, Exh. 1, p. 199-211; Doc. 20, Exh. 5.)  Godwin appears to allege that these were episodes of either racial discrimination, (doc. 1, ¶ 10), or retaliation for engaging in protected conduct, (doc. 18, p. 36), although what that protected conduct may have been is unclear.  In spite of Godwin's allegations of disparate treatment, the "time records in Godwin's area" indicate "numerous white employees were docked pay" for similar tardiness.  (Doc. 16, Exh. 3, ¶ 26.)

US Steel and the USWA had several meetings regarding Godwin's discipline and engaged in efforts to settle his grievance.  (Doc. 16, Exh. 3, ¶ 19; Exh. 7, p. 69-70; Exh. 11, ¶ 19; Exh. 17, ¶ 23-26.)  The USWA argued that Godwin was just slow and needed retraining.  (Doc. 16, Exh. 17, p. 35-36.)

During this period, Godwin alleges that less senior white employees were promoted to the Labor Grade 3 position ahead of him.  (Doc. 1, ¶ 6-9.)  However, the record indicates  Godwin's prior disqualification from the Labor Grade 3 position kept

him from being promoted up to the Labor Grade 3 position.  (Doc. 16, Exh. 11, ¶ 27.)

None of the employees that Godwin lists had previously been disqualified from the Labor

Grade 3 box.  (Doc. 16, Exh. 11, ¶ 28-42.)

      **(d)**     **2006**

In early 2006, Worthen needed additional manpower to move up to the Labor

Grade 3 box.  (Doc. 16, Exh. 7, p. 69; Exh. 17, p. 35-36.)  Although Godwin was the most

senior employee in the Labor Grade 2 box at the time, his disqualification from the Labor

Grade 3 box made him ineligible to move up.  (Doc. 16, Exh. 17, p. 35-36.)  Ultimately, a

decision was reached to retrain Godwin as an Entry End Operator and to convert his

discharge to a five day suspension.  (Doc. 16, Exh. 3, ¶¶ 20-22; Exh. 11, ¶ 20; Exh. 18.)

Godwin was to receive the difference in pay he would have received had he stayed at the

Labor Grade 3 box.  (Doc. 16, Exh. 18.)  Jodi Watson ("Watson"), a staff supervisor,

notified Godwin of this decision by letter on February 15, 2006.  (Doc. 16, Exh. 18.)

Godwin's retraining was set to begin on February 20, 2006.  (Doc. 16, Exh. 3, ¶

22; Exh. 9, p. 61.)  A schedule was posted on Thursday, February 16, 2006, which slated

Godwin to work on Monday, February 20, 2006, as an Operating Technician I Trainee

Entry End Operator.  (Doc. 16, Exh. 9, p. 60; Exh. 11, ¶ 21; Exh. 19.)  On the morning of

February 20, Godwin reported to his old Utilityman function and not to the Entry End

Operator function for retraining.  (Doc. 16, Exh. 11, ¶ 22; Exh. 20; Exh 21.)  Godwin then

met with his supervisors Scott Messer and David Worthen; they directed him to report to

the Entry End Operator function for training or to sign a waiver.  (Doc. 16, Doc. 1, p. 214-220, 120-121, 128; Exh. 7, p. 75, 92; Exh. 9, p. 37-39, 63-66, 72, 82-83.)  Godwin refused the job under the belief that his grievance had not yet been resolved.  (Doc. 16, Exh. 1, p. 215-218.)  Worthen explained to Godwin that by refusing to train on the Entry End Operator function or to sign the waiver, he was being insubordinate and could be subject to discipline.  (Doc. 16, Exh. 1, p. 214-220; Exh. 7, p. 95-96.)  Worthen and Messer explained to Godwin he would not be subject to discipline for work performance issues while training.  (Doc. 16, Exh. 1, p. 219; Exh. 9, p. 83.)  Godwin knew that he was supposed to follow the directions of supervisors.  (Doc. 16, Exh. 1, p. 40, 220.)  The USWA also told Godwin to report for training.  (Doc. 16, Exh. 1, p. 218.)  After Godwin refused to report to training, Worthen sent him home and issued a five day suspension subject to discharge for insubordination.  (Doc. 16, Exh. 1, p. 80, 129-130; Exh. 7, p. 68, 121, 135; Exh. 9, p. 72; Exh. 20-22.)

On February 23, 2006, Godwin returned to work for a grievance proceeding and Worthen converted his discipline to a discharge.  (Doc. 16, Exh. 7, p. 68-69, 96; Exh. 17, p. 49-50, 130; Exh. 23.)  Sometime during or after this meeting, Godwin turned over a memorandum to US Steel that outlined his various allegations of discrimination against Ralph Doering and Scott Messer.  (Doc. 16, Exh. 17, p. 62-64.; Doc. 20, Exh. 6.)

On February 27, 2006, Godwin filed a grievance to protest the February 23 conversion of his suspension to a discharge.  (Doc. 16, Exh. 1, p. 130-132; Exh. 24.)

Pending the resolution of this grievance, Godwin was allowed justice and dignity and permitted to continue working.  (Doc. 16, Exh. 1, p. 82; Exh. 3, ¶ 23.)  The day after the insubordination incident, Godwin began training on the Entry End Operator function. (Doc. 16, Exh. 1, p. 122.)

Godwin's grievance was heard at arbitration on April 12, 2006.  (Doc. 16, Exh. 3, ¶ 24; Exh. 26.)  On May 30, 2006, the Board of Arbitration issued its award upholding Godwin's discharge.  (Doc. 16, Exh. 3, ¶ 25; Exh. 26, ¶¶ 23-24.)  Subsequently, Godwin's claim for unemployment compensation was denied.  (Doc. 16, Exh. 1, p. 142; Exh. 27.)

Godwin did not file a civil rights complaint with the USWA / US Steel civil rights committee or complain to Worthen of race discrimination prior to his termination.  (Doc. 16, Exh. 1, p. 212; Exh. 7, p. 57, 67, 88.)

On September 15, 2006, Godwin filed an EEOC Charge of Discrimination.  (Doc. 16, Exh. 1, p. 144; Exh. 28.)  On May 2, 2007, the EEOC issued its Dismissal and Notice of Rights finding no Title VII violation.  (Doc. 16, Exh. 29.)  Godwin also filed an unfair labor practice charge against the USWA, and it was denied.  (Doc. 16, Exh. 1, p. 170.)

**IV.   Discussion**

**(a)     Title VII Statute of Limitations**

"Title VII requires aggrieved persons to file a complaint with the EEOC 'within one hundred and eighty days after the alleged unlawful employment practice occurred.'" *Delaware Sate College v. Ricks*, 449 U.S. 250, 257-59 (1980)(quoting 42 U.S.C. § 2000e-

10

5(e)(1)).  In this case, Godwin may not seek to recover under Title VII for employment actions that occurred prior to March 19, 2006, which is 180 days prior to the filing of his September 15 EEOC charge.  (Doc. 16, Exh. 28.)  This period covers various actions of which Godwin complains, dating from 2004 through 2006 and including Godwin's discharge on February 23, 2006.  (Doc. 15, p. 20.)  42 U.S.C. § 2000e-5(e)(1); *see Ricks*, 449 U.S. at 261 ("the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods")(citing *Electrical Workers v. Robbins & Myers, Inc.*, 429 U.S. 229 (1976)).  Accordingly, this court finds that all of Godwin's Title VII claims are time barred because they predate March 19, 2006.

This statutory limitation does not apply to Godwin's parallel claims under 42 U.S.C. § 1981.  *See Ricks*, 449 U.S. at 255 n. 5.  "The statute of limitations for § 1981 claims is the same as the state statute of limitations for personal injury claims in that state."  *Robinson v. Regions Fin. Corp.*, 242 F. Supp. 2d 1070, 1078 (M.D. Ala. 2003) (citing *Baker v. Gulf & Western Indus., Inc.*, 850 F.2d 1480, 1482 (11th Cir. 1988)). Alabama has a two year statute of limitations for personal injury claims.  *See* ALA. CODE § 6-2-38 (1975).  However, where a plaintiff's claims are made possible by the 1991 amendments to § 1981, a four year statute of limitations applies.  *See Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008)(applying 28 U.S.C. 1658(a)'s "catch-all" four year statute of limitations to plaintiff's racial discrimination

and retaliation claims). Defendant does not dispute the timeliness of plaintiff's § 1981 claims.

Although plaintiff's Title VII claims are time barred, the analytical elements for claims of race discrimination and retaliation are the same under Title VII and § 1981, and the court does not expressly draw a distinction between the two separate claims in its analysis below. *See Stallworth v. Shuler*, 777 F.2d 1431, 1433 (11th Cir. 1985)(court need not separately consider Title VII and § 1981 racial discrimination claims); *see also Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008)(using same analytical framework for retaliation claims under both § 1981 and Title VII).

**(b) Racial Discrimination**

**(i) Legal Standard**

"Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997)(quoting 42 U.S.C. § 2000e-2(a)(1)). "To make out a *prima facie* case of racial discrimination a plaintiff must show (1) [he] belongs to a protected class; (2) [he] was qualified to do the job; (3) [he] was subjected to adverse employment action; and (4) [his] employer treated similarly situated employees outside her class more favorably." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008)(citing *Knight v. Baptist Hosp. of*

12

*Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003)).

For any claim brought under Title VII, "the plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence." *Crawford*, 529 F.3d at 975 (quotation omitted). Absent direct evidence, a plaintiff may rely upon circumstantial evidence to prove discriminatory intent under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). *Id.* at 975-76. "Under this framework, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Id.* at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802). If the employer is able to meet this burden, the plaintiff is afforded the opportunity to demonstrate that the employer's proffered reason for the adverse employment action is merely a pretext for discrimination. *Holifield*, 115 F.3d at 1565 (citing *McDonnell Douglas*, 411 U.S. at 804). That is, "once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race." *Id.* (citing *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1061 (11th Cir. 1994)).

**(ii)    Prima facie case**

As an African-American, Godwin is a member of a protected class. The court will examine each of Godwin's allegations of racial discrimination independently to determine

if they satisfy the remaining three elements of a prima facie case of discrimination.  First, Godwin contends that his pay was docked in late 2005 and early 2006 as a result of racial discrimination, not US Steel's articulated reason of tardiness.  (Doc. 1, ¶ 10; Doc. 16, Exh. 1, p. 200-209; Doc. 18, p. 16, ¶ 95.)  The record reflects, however, that white employees in the same area were docked pay for similar tardiness.  (Doc. 16, Exh. 3, ¶ 26.)  Godwin produced no evidence of any other employee who arrived at work at similar times and was not docked pay.  Accordingly, Godwin has failed to establish a prima facie case that his pay was docked as a result of racial discrimination.  *See Crawford*, 529 F.3d at 970 (plaintiff must show employer treated similarly situated employees differently).

Second, Godwin argues that various disciplinary actions taken against him at US Steel were racially motivated, including reprimands and his disqualification from the Labor Grade 3 box.  (Doc. 18, p. 8, ¶ 26.)  Godwin admittedly had no personal knowledge of any other persons who had performance issues similar to his own and who were not reprimanded.  (Doc. 16, Exh. 1, p. 174-175, 184-189.)  Godwin seems to rest this allegation of discrimination primarily on his own testimony that Joe Addison, a white employee, had performance issues similar to Godwin's and was not disciplined.  (Doc. 1, ¶ 8.)  There is no evidence in the record to substantiate this claim.  Accordingly, the court finds that plaintiff has failed to make out a prima facie case that any reprimand he received was racially motivated.  *See Holifield*, 115 F.3d at 1564 (plaintiff's opinion that he was discriminated against, without more, is insufficient to establish prima facie case of

14

discrimination).

Third, Godwin asserts that other employees were "routinely placed in higher positions over him because of his race." (Doc. 1, ¶¶ 9 & 13; Doc. 18, p. 8, 4-7, 12-15, 19-21, 24-25, 27, 32.) Godwin argues, in spite of evidence to the contrary, that he was qualified for the position of Entry End Operator but denied the opportunity to progress to that position because of his race. (Doc. 18, p. 37; *see also* Doc. 16., Exh. E, Ex. A (Godwin's discipline history); *see also* Doc. 16, Exh. 14-15 (notifications of suspension for unsatisfactory work)). Although Godwin argues these promotions conflicted with US Steel's practice of promoting employees based on seniority, (doc. 18, p. 38), the record indicates that these employees were promoted ahead of Godwin to the Labor Grade 3 box because of their own proficiency and his prior disqualification from that very employment level. (Doc. 16, Exh. 11, ¶ 28-42.) The court finds that Godwin has failed to establish a prima facie case of race discrimination on these allegations both because he was not qualified to do the job and because he has not shown that any other employee who had previously been disqualified from the Labor Grade 3 box was promoted ahead of him.

Fourth, Godwin asserts that he was passed over for training necessary to advance to higher positions at US Steel. (Doc. 18, p. 38.) The record, however, indicates that training was available to all employees equally. (Doc. 16, Exh. 11, ¶¶ 10 & 11; Exh. 7, p. 49-50, 54-55; Exh. 9, p. 26-27.) Accordingly, there is no evidence that any other employees were treated differently, and Godwin has failed to establish a prima facie case

15

of discrimination based upon a failure to receive training.

Finally, Godwin alleges that his termination for insubordination was racially motivated.  Godwin offers no evidence of any other similarly situated employee who was insubordinate and was not terminated.  Thus, Godwin has failed to make out a prima facie case that his termination for insubordination was discriminatory.

### (iii)    Pretext

Even assuming that Godwin could establish a prima facie case of racial discrimination, his claim would still fail because he has failed to rebut US Steel's legitimate, non-discriminatory reasons for any adverse action taken against him.

Godwin concedes that US Steel's proffered explanations for all of the alleged acts of discrimination were legitimate and non-discriminatory.  (Doc. 18, p. 39.)  *See Crawford*, 529 F.3d at 975-76 (employer may rebut prima facie case by articulating some legitimate, non-discriminatory reason for action taken).  The burden thus falls on Godwin to demonstrate that these legitimate, non-discriminatory reasons were a pretext for discrimination.  *See Holifield*, 115 F.3d at 1565 (if employer is able to articulate a non-discriminatory reason, burden falls on plaintiff to show proffered reason is a pretext for discrimination).

"A plaintiff may prove pretext 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'"  *Mayfield v. Patterson*

16

*Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)(quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)).  Attempting to prove pretext, Godwin states the following: "Defendant's explanation for refusing to promote the Plaintiff up through the line of progression is truly unworthy of credence.  Plaintiff has proven that Defendant's proffered nondiscriminatory reasons are a pretextual ruse designed to mask discrimination . . . ." (Doc. 18, p. 39.)  There is no evidence before the court on which a reasonable jury could find that US Steel's legitimate, non-discriminatory reasons for any alleged instance of discrimination were pretextual.  Conclusory allegations alone, such as Godwin's allegation of pretext above, are insufficient to create an inference of pretext or discrimination where an employer has put forward evidence of legitimate, non-discriminatory reasons for any adverse actions.  *Mayfield*, 101 F.3d at 1376.  Here, Godwin has conceded that US Steel has put forward evidence of legitimate, non-discriminatory reasons for the adverse actions it took, but he has failed to offer any evidence that those reasons were pretextual.

Accordingly, in light of Godwin's failure both to establish a prima facie case and to rebut US Steel's proffered reasons for adverse action, the court finds that US Steel's Motion for Summary Judgment as to Godwin's allegations of racial discrimination is due to be granted.

**(c)      Retaliation**

**(i)      Legal Standard**

"Title VII's anti-retaliation provision forbids actions by an employer that 'discriminate against' an employee because she has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)(citing 42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation under this provision, a plaintiff must show that (1) he engaged in an activity protected by Title VII; (2) he suffered an adverse employment action; and (3) there was some causal relation between the two events.  *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999).  "The challenged action must be materially adverse from the standpoint of a reasonable employee."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n. 52 (11th Cir. 2008)(citing *Burlington N.*, 548 U.S. 53).   To show a causal connection between the adverse action and the employee's protected conduct, "the plaintiff must prove 'that the protected activity and the adverse action are not completely unrelated.'" *Id*. (quoting *Wideman v. Wal-Mart Stores, Inc.*, 1414 F.3d 1453, 1454 (11th Cir. 1998)). While the causal link requirement is interpreted broadly, *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993), "merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element–for temporal progression to be enough, the events must be in 'very close'

18

proximity." *Davis*, 516 F.3d at 978 n. 52.

As with claims of race discrimination, "Title VII retaliation claims require that once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action.  If the employer offers such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford*, 529 F.3d 961 at 976 (quotations omitted).

**(ii)    Discussion**

Although not readily ascertainable from either the pleadings or oral argument, it appears that Godwin alleges that he engaged in four separate protected acts for which he was retaliated against.  First, Godwin gave information in 2005 to US Steel's lawyers in another lawsuit during which he complained of experiencing discrimination.  (Doc. 16, Exh. 1, p. 211, 238-239.)   Despite his allegations to the contrary, Godwin has failed to demonstrate that any causal link exists between the information he allegedly imparted to US Steel attorneys in another lawsuit and any subsequent adverse employment action taken against him, much less the two specific adverse acts he alludes to.  (*See* Doc. 18, p. 37: "At the time plaintiff was terminated the defendant was aware that Plaintiff had complained in early 2005, three weeks before he was suspended for insubordination and within three months of the date Plaintiff reported to work and was locked out of the facility.")  There is neither direct nor circumstantial evidence that any person at US Steel

was aware of any information plaintiff provided to US Steel attorney in a previous lawsuit. *See Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir. 1993)("[A] plaintiff must generally establish that the employer was actually aware of the protected expression . . . . The defendant's awareness of the protected statement . . . may be established by circumstantial evidence.").  Nor is there any evidence that Godwin's conversation with US Steel lawyers was so temporally proximate to an adverse action that an inference may be drawn that the statement precipitated the adverse action. *See Davis*, 516 F.3d at 978 n. 52 (protected activity must be "very close" in time to infer that it caused adverse action). In this case, there is a gap in time of at least three months between Godwin's alleged conversation with US Steel attorneys and any adverse action, and that gap is sufficient to prevent the drawing of an inference that Godwin's 2005 statements are related to any adverse action that followed. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007)("A three to four month disparity between the statutorily protected expression and the adverse employment action is not enough" infer adverse action).  Accordingly, the court finds that Godwin has failed to demonstrate that any causal link exists between Godwin's 2005 statements and any subsequent adverse employment action taken against him, and the court need not evaluate the other elements of a prima facie case of retaliation as to this claim. *See Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361 (11th Cir. 2007)(finding it unnecessary to consider first element of prima facie case where causation element not satisfied).

As evidence of a second protected act, Godwin submitted two written complaints in 2005 relating to his demotion and suspension from the Exit End and Entry End positions.  (Doc. 16, Exh. 16.)  Although not specifically stated, Godwin seems to allege that these complaints precipitated all adverse employment actions which followed, which include his demotion from Labor Grade 3 to Labor Grade 2, docked pay for tardiness, and ultimately his termination.  Godwin's demotion from the Labor Grade 3 to Labor Grade 2 was a direct result of his poor workmanship.  Godwin was docked for tardiness in late 2005 and early 2006 in the same manner as other employees.  Finally, US Steel terminated Godwin for insubordination in February 2006.  Godwin presented no evidence that any of these actions were a pretext for discrimination.  *See id*. ("If the employee offers legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation.").  To the contrary, the evidence shows that US Steel reduced Godwin's August 2005 discharge to a suspension and worked with his union to establish a plan under which he could return to his prior position.  Godwin spurned these opportunities and in so doing, directly defied his superiors.  Assuming, without finding, that Godwin has made out a prima facie case of retaliation based on his 2005 complaints, the court finds as dispositive US Steel's proffered legitimate, non-discriminatory reasons for every employment action taken after their submission.  *See Holifield*, 115 F.3d at 1566 ("Once the plaintiff establishes his *prima facie* case, the employer must proffer a legitimate, non-discriminatory reason for

the adverse employment action."); *see also Pennington v. City of Huntsville*,  261 F.3d

1262, 1266 (11th Cir. 2001)(assuming without deciding that plaintiff established prima

facie case, defendant's legitimate reasons for the decision were dispositive).

 Third, Godwin furnished a written memo to US Steel supervisors at his February

23 grievance hearing which contained a timeline of perceived discrimination he

experienced while an employee at US Steel.  (Doc. 16, Exh. 17, p. 62-64; Doc. 20, Exh.

6.)  Godwin presented no evidence that anyone at US Steel was aware of the

memorandum prior to his suspension for insubordination or prior to the decision to

convert that suspension to a discharge.  At best, Godwin asserts that the memorandum

was offered contemporaneously with the conversion of his suspension to discharge.  Even

drawing an inference in Godwin's favor that the memorandum was offered at the hearing

where a decision was made to terminate him, and that this inference could establish a

prima facie case of retaliation, US Steel has offered a legitimate, non-discriminatory

reason for discharging him: insubordination.  Godwin has put forward no evidence to

rebut this conclusion.  *See Holifield*, 115 F.3d at 1566.

 Finally, Godwin seems to allege that he complained of discrimination relating to

his pay being docked.  (Doc. 18, p. 35, "Plaintiff complained and engaged in protected

activity in early 2005, *early 2006*, and in writing on February 23, 2006." (emphasis

added).)  Even assuming evidence of this complaint exists, which the court was unable to

find in the record, the only adverse action taken after the docking of Godwin's pay was

his termination for insubordination.  That termination, as previously discussed, was legitimate and non-discriminatory.  Accordingly, even assuming this allegation could satisfy the first requirement of a prima facie case of retaliation, US Steel has offered a legitimate, non-discriminatory reason for the subsequent action it took against Godwin. *See Pennington*, 261 F.3d at 1266.

The court finds that US Steel has proffered a legitimate, non-discriminatory reason for each act alleged to be retaliatory, and accordingly, US Steel's Motion for Summary Judgment as to all of Godwin's allegations of unlawful retaliation is due to be granted.

**V.   Conclusion**

Based on the forgoing, the court finds that US Steel's Motion for Summary Judgment, (doc. 14), is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE** this the 25th day of February, 2009.


SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE